UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                                                                                      <u>DECISION AND ORDER</u>

                      Plaintiff,

                                                                                                         15-CR-6101L

     v.

JAMES EWARD SANDFORD,

                     Defendant.
_____

Defendant James Sandford ("Sandford") was indicted by Superseding Indictment (Dkt. #105) filed on March 15, 2016, charging him in eleven counts of distributing a controlled substance, two counts charging firearm offenses and a single count of witness tampering. Defendant was represented commencing in about March, 2016 by attorney Matthew Nafus, Esq. ("Nafus"), Nafus was the third lawyer tasked with representing this defendant.

A jury trial commenced on January 4, 2017 and after a twelve-day trial, defendant was convicted on the two firearms counts and the single count of witness tampering. The jury was unable to agree on all of the narcotics-related counts and a mistrial was declared.

In due course, the Probation Department filed a Presentence Report ("PSR") (and later a revised PSR). Based on that report and its high guideline range recommendation, Sandford addressed the Court on July 27, 2017 in open court and read a lengthy letter (Dkt. #219). In essence, Sandford claimed that Nafus had provided ineffective assistance of counsel and he requested new counsel or be allowed to proceed *pro se*. Thereafter, Nafus was relieved from any further responsibility on the file based on Sandford's charges against him.

Several months later, on October 24, 2017 (Dkt. #235), Sandford filed, *pro se*, a motion pursuant to Fed. Crim. P. Rule 33 for a new trial. A motion alleged that attorney Nafus had provided ineffective assistance of counsel, which prejudiced the defendant. The gist of the motion was that Nafus had not properly advised Sandford of the risks of proceeding to trial and the potential penalties that could result.

The Government responded to the motion (Dkt. #239) and suggested, among other things, that the motion was premature since Sandford had not yet been sentenced by the court and, therefore, it was unclear whether the dire consequences claimed by Sandford would come to pass. The Court concurred and the parties proceeded to prepare for sentencing.

On January 22, 2018, after a lengthy sentencing proceeding, Sandford was sentenced to a term of 13 years on Count 14 (witness tampering) and two 10-year sentences on the two firearms offenses (Counts 12 and 13), all to run concurrently for an aggregate sentence of 13 years.

Sandford filed an appeal from that Judgment and that appeal is still pending. New counsel was appointed by the Second Circuit Court of Appeals to represent Sandford on the appeal.

In spite of the fact that the appeal is pending, this Court determined, in a Decision filed on April 2, 2018 (Dkt. #280), that it had jurisdiction to consider the Rule 33 motion and, therefore, the Court scheduled a hearing on the matter for May 30, 2018. The Court appointed yet another lawyer, Robert Wood, Esq. – the sixth lawyer that has represented Sandford in this case – to represent Sandford at the May 30th hearing.

At the hearing, two witnesses testified: the defendant Sandford and Attorney Nafus. Both sides submitted exhibits, including transcripts of several court proceedings. Defendant and the Government filed post-hearing legal memoranda, which the Court has considered and reviewed.[1]

---

[1] Sandford was given an opportunity to file his own *pro se* memorandum but he has not done so.

Defendant's motion under Rule 33 did not seek a "new trial" on all of the charges, but rather requested that he be allowed to now "take" one of the several plea offers presented by the Government during the several months prior to trial, and be sentenced according to those offers rather than to the term imposed by this Court on January 22, 2018.

Sandford has failed to carry his burden of demonstrating that Nafus provided ineffective assistance of counsel. After considering all of the evidence from the hearing and the above-referenced memoranda, I find that the defendant has failed to establish that his trial attorney provided ineffective assistance of counsel under the standards set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To the contrary, I find the evidence demonstrates careful and competent advice in a complex case involving a very difficult client. Therefore, I find the defendant has failed to establish either prong of the *Strickland* test: (1) he has failed to demonstrate that counsel's performance was deficient; and (2) he failed to show or demonstrate any prejudice resulting from counsel's performance. Defendant's motion pursuant to Rule 33 is in all respects denied.

## DISCUSSION

Although presented differently from time-to-time, defendant's principal claim now is that he received incomplete or insufficient advice prior to trial and subsequent to it, and therefore did not accept various guilty plea offers that had been made by the Government. As mentioned, although defendant's motion is styled as a motion for a new trial, the requested relief is that he be resentenced according to the terms of one of the plea offers, 70-87 months, which of course is much lower than the sentence Sandford actually received by the Court.

After reviewing the testimony at the hearing on the motion, as well as the post-hearing memoranda, and in view of the prior record and numerous court appearances where pleas were

discussed, it is clear that defendant's motion is little more than a classic case of buyer's remorse. The evidence is clear, and of record, that defendant was advised several times of proposed plea offers and he rejected each and every one of them. This rejection came after Sandford had been advised repeatedly on the record by the Government and this Court as to the nature of the plea offer and the maximum penalties Sandford faced should there be a conviction.

In the *Strickland* case, the United States Supreme Court established a performance and prejudice test for the Court to analyze in determining whether trial counsel in a criminal case provided ineffective assistance. The burden is clearly on the defendant. The test is often described as a two-prong test. The defendant, who carries a heavy burden, must prove that counsel's performance was deficient, that is that it fell below an objective standard of reasonableness and also that the alleged deficient performance prejudiced the defense.

Both prongs must be satisfied. Sandford has failed to prove either here.

Concerning allegations of ineffective assistance, defendant must show more than differences of strategy and the errors must be serious and material. As to the second prong under *Strickland*, defendant must show that because of the deficient performance he sustained prejudice.

Often where it is clear defendant has suffered no prejudice, therefore failing to establish the second prong under *Strickland*, a reviewing court can dispose of the motion without considering whether the performance was defective. In this case, as the Government points out in its thorough Post-Hearing Submission In Response to Defendant's Motion Pursuant to Rule 33, Dkt. # 327 (hereinafter "Gov't. Response") at pp. 6-7, Sandford has failed to show any prejudice in at least two respects. Sandford seems to suggest that he received ineffective assistance because he was not advised that sentences on the firearm counts could run consecutively. As the Government notes, all of the Court's sentences were imposed concurrently, and therefore Sandford

suffered no prejudice. Based on the testimony at the hearing, however, I accept attorney Nafus's testimony that Sandford was fully advised of the sentencing options presented to the Court.

The second matter relates to defendant's insistence that he was never advised that the Court could use the so-called cross-reference Sentencing Guideline rules under Section 2K2.1(c). It was under this Section that the Probation Department determined Sandford's Guideline range to be exceptionally high, 360-480 months imprisonment. The record is clear that attorney Nafus filed objections to the Presentence Report challenging Probation's determination on this point. More to the point, this Court <u>rejected</u> those calculations as well and did not use the cross-reference section at all and, therefore, determined Sandford's Guideline Range to be literally decades lower than what had been determined to be the case by Probation. Therefore, Sandford complains now and seeks relief for a sentencing consequence that never occurred. There is no prejudice here and therefore that part of Sandford's claim must be rejected and denied.

**<u>Maximum Penalties</u>**

Sandford's claim that he did not receive information from counsel as to the maximum penalties is belied by numerous transcripts of court proceedings. The Government, charitably, describes this claim as "a complete fiction." (Gov't. Response, at p. 7). Sandford was cross-examined by Government's counsel at the Rule 33 hearing and he admitted knowing what the statutory maximums were (Gov't. Response, Exhibit (hereinafter "Ex.") 1), Tr. of 5/30/18, at pp. 70, 97).[2]

Transcripts of court proceedings show that Sandford was repeatedly advised of his maximum exposure. This occurred at defendant's initial appearance on the original indictment

---

[2] Exhibits 1-11 are attachments to the Gov't. Response.

(Gov't. Response, Ex. 2; Tr. of 7/15/15, at pp. 3-8). Thereafter, upon defendant's arraignment on the Superseding Indictment on March 22, 2016, he was once again advised of the maximum penalties. (*See* Gov't. Response, Ex. 3, Tr. of 3/22/16, at pp. 5-8).

Pretrial offers to dispose of the indictment were discussed with defendant and his attorney for over several months prior to commencement of the trial in January 2017. The parties met in court several times during that period and on each occasion discussion of a plea offer was broached, as well as the significant exposure faced by Sandford should he be convicted on all charges.

The offers varied a bit but in each case they were emphatically rejected by Sandford often with a "counteroffer" for a lesser sentence. All of the offers made by the Government were submitted to Sandford and he does not now claim otherwise.

The first proposal was contained in an exchange of emails between the then-prosecutor, Jennifer Noto, and defense counsel (Gov't. Response, Ex. 8). The proposal was a plea to a violation of 18 U.S.C. § 922(g) with a 10-year term of imprisonment. The parties appeared before this Court on September 20, 2016, shortly before the then-scheduled trial and the Government placed on the record defendant's exposure under the statute and the Sentencing Guidelines, as well as the plea offer (Gov't. Response, Ex. 11, Tr. of 9/20/16). The proposal presented was for a plea to one count of a felon-in-possession (Section 922(g)) with an agreed-upon range under Federal Criminal Procedure 11(c)(1)(C) of 7-10 years imprisonment (Gov't. Response, Ex. 11, Tr. of 9/20/16, at p. 4). Defense counsel confirmed that the offer had been conveyed but the defendant was "not interested" (Gov't. Response, Ex. 11, Tr. of 9/20/16, at p. 7). Sandford himself confirmed his understanding of the offer and his rejection of it, stating that "I'm not guilty, your Honor" (Gov't. Response, Ex. 11, Tr. of 9/20/16, at p. 6).

The prosecutor then also presented a detailed summary of the statutory maximum penalties, as high as 40 years, if convicted of selling drugs with 1,000 feet of a school and that the Sentencing Guidelines could be as much of 324-405 months on the drug charges (Gov't. Response, Ex. 11, Tr. of 9/20/16, at p. 5).

The parties next appeared at a status conference before trial on December 1, 2016.[3] By then AUSA Noto had left the office and a new prosecutor, Brett Harvey, was assigned to the case. At that time, Harvey announced a somewhat more lenient plea offer. Under that proposal, defendant would plead to one count of Section 922(g) and his exposure would be 70-87 months (Gov't. Response, Ex. 4, Tr. of 12/1/16, at p. 4). AUSA Harvey stated that he had "been talking periodically with Mr. Nafus" about the new offer. (*Id.* at p. 4). Once again, Sandford was advised of the high Guideline calculation of 324-405 months if convicted on the drug charges. The Government agreed to keep the offer open for a day or so since trial was fast approaching. Sandford then volunteered that "we're close" when the Court inquired if he was interested at all in a disposition. (Gov't. Response, Ex. 4, Tr. of 12/1/16, at p. 8).

Later that month, on December 29, 2016, the parties appeared in Court for a pretrial conference in anticipation of the trial start on January 4, 2017 (Gov't. Response, Ex. 6, Tr. of 12/29/16). The Court then confirmed that defendant was not interested in the plea that had been offered and that the case would then proceed to trial. However, even after trial had commenced, the parties continued to discuss a plea. On January 5, 2017, the prosecutor, Harvey, advised the Court that "a revised" plea offer had been made to the defendant after court on the previous day. Alternate versions had been proposed with an agreed-upon sentencing range under Federal

---

[3] The trial had been adjourned for several months in the hope that the Second Circuit might decide a case before it involving the same or similar drugs as those in Sandford's Indictment. As it turned out, that clarifying decision (*United States v. Demott*, 906 F.3d 231) was not issued until October 9, 2018, well after the trial and sentencing of Sandford.

Criminal Procedure 11(c)(1)(C) of between 72-84 or 70-87 months (Gov't. Response, Ex. 7, Tr. of 1/5/17, at p. 2). Nafus advised the Court at that time that Sandford was not interested in the offers.

At the hearing on the Rule 33 motion, Nafus testified at this point during trial, since he was very familiar with the case and its weaknesses, he told Sandford that he should "seriously consider" taking the 70-87 month offer. Sandford refused.

Now, after rejecting the plea offers that had been made numerous times prior to trial, Sandford asks this Court to give him the benefit of such a plea. There is no justification whatsoever for such relief. Defendant made his choice; he knew the risks and he elected to take his chances at trial.

Sandford was actively involved in his case and was knowledgeable about the statute and the Guidelines, although it appears that he had a more optimistic view of his case than anyone else. At the hearing on defendant's Rule 33 motion, his attorney, Nafus, discussed the numerous times that he and Sandford discussed the case and the risk of going to trial. (Gov't. Response, Ex. 1, Tr. of 5/30/18, at pp. 99-103, 120).

Nafus is a very experienced criminal defense lawyer who has practiced in this Federal Court and in local state courts for decades. He was an Assistant District Attorney for 9 years and has been in private practice for 12 years, doing criminal defense work. Nafus testified that defendant was a very difficult client and that he repeatedly went over many facts about the case and the potential outcomes with Sandford. He estimated that he visited Sandford, who was in custody, 35-36 times during the course of his 15-months representation.

Sandford rejected all plea offers, but did make counteroffers, at one time to 57 months. Nafus advised Sandford that he had the highest criminal history category (VI) and he told Sandford

that there were several aggravating factors that might impact sentencing adversely. For example, Sandford was selling very powerful drugs to 14 to 16-year-old teenagers and that he had used his family members to sells drugs as well. Nafus testified that he told Sandford repeatedly that the Guidelines were advisory only and that he never promised Sandford that he would get a particular sentence, especially a sentence below that offered to settle the case, after trial.

As trial became imminent, Nafus told Sanford that the risks were too great; he advised Sandford not to risk going to trial over merely a one-year difference between what was offered and what was acceptable.

I accept the testimony of Nafus as to the scope and extent of his advice to Sandford. He did what a good lawyer would do; he explained all the options and gave the client his view that the offer made just before trial should be accepted. Defendant was of course free to reject that advice, but he obviously did so at his peril.

I do not credit Sandford's version presented at the Rule 33 hearing. Such testimony at such a proceeding after trial and sentencing is always suspect. It appears clear now that defendant has second thoughts about not taking the plea when it had been offered. He failed to listen to his lawyer and now wants the Court to give him the benefit of the bargain that he rejected numerous times. After reviewing Sandford's testimony and the admissions he made at the hearing, I do not find his testimony credible concerning his claims that Nafus promised that he would receive a sentence lower than the plea offers after trial. Such a claim strains credulity. In sum, this case really boils down to nothing more than "buyer's regret." Sandford made a choice to proceed to trial, contrary to the advice of his lawyer and now seeks relief in this Court by turning against his lawyer, a lawyer who performed remarkably well at the trial obtaining a hung jury on the various serious drug counts.

9

**CONCLUSION**

Defendant's motions for a new trial (Dkt. ##235, 282[4]) are in all respects DENIED.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
December 7, 2018.

---

[4] On May 8, 2018 (Dkt. #282), just prior to the scheduled hearing on defendant's Rule 33 motion concerning alleged ineffective assistance of counsel of attorney Nafus, Sandford filed a four-page affidavit complaining about the way two other of his prior attorneys handled portions of the case. One dealt with pretrial matters and the other with sentencing.

Such matters were never discussed further or pursued at the hearing on the Rule 33 motion. Defendant has made allegations and challenged many activities of the half-a-dozen attorneys that represented him at various portions of the case. But, in any event, there is no merit to these present claims that were raised but not pursued.

Two of the matters relate to possible suppression issues concerning seizure of a firearm from a storage unit and relating to the initial traffic stop of defendant. These were litigated before a magistrate judge and this Court. The matters complained of now to some extent were tactical decisions made by then counsel. There was a full opportunity to litigate the matters and that occurred. At trial, defendant's mother, who testified for the Government advised that she consented to the search of the storage unit where the stolen weapon was found. In any event, there was ample evidence from other witnesses connecting defendant to the purchase of the stolen shotgun for a few bags of drugs.

Concerning sentencing, there were lengthy proceedings on sentencing issues. Defendant's then-attorney James Riotto did file a Sentencing Memorandum (Dkt. #257), although for most of the proceedings prior to sentencing, Sandford elected to proceed *pro se*. At sentencing, the Court did impose an upward departure to a degree. The parties were given notice by Text Order of July 14, 2017 (Dkt. #215) to be prepared to discuss whether the facts supported an upward departure or variance. Therefore, the parties had notice of this possibility. But, in any event, as the United States Supreme Court determined in *United States v. Irizarry*, 553 U.S. 708 (2008), a sentencing court need not now notify the parties of its intent to impose a non-Guidelines sentence.